UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DOUGLAS T. CUMMINGS,

                    Petitioner,

-vs-

JOHN BURGE,

                 Respondent.

_____

**No. 03-CV-6632(DGL)(VEB)**

**REPORT AND RECOMMENDATION**

## I.    INTRODUCTION

Douglas Cummings is incarcerated pursuant to a March 30, 2000 judgment of New York State, Wyoming County Court, convicting him of Rape in the First Degree, for which he was sentenced to a prison term of ten and one-half years. Represented by retained counsel Frank T. Aloi, Esq., Cummings seeks a writ of habeas corpus pursuant to 28 U.S.C.  2254, alleging that this conviction was unconstitutionally obtained. Pursuant to an agreement with the Wyoming County District Attorney's Office, the New York State Attorney General's Office, Alyson Gill, Esq., of counsel, is representing respondent John Burge. Pursuant to 28 U.S.C. 636(b), this matter has been referred to the undersigned for the issuance of, *inter alia*, a report and recommendation regarding the disposition of Cummings' petition. For the reasons that follow, I recommend that the petition be denied.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Pre-Trial Proceedings.

The conviction here at issue stems from an incident that occurred on November 29, 1997,

1

at Wyoming County Community Hospital. Cummings, twenty-two years-old at the time, was

working with the hospital's maintenance staff, fulfilling his community service obligations as a

result of a second-degree rape conviction. R.185, 998, 1031.[1] B.S., seventeen years-old at the

time, was volunteering at the Hospital as part of her high school studies in allied health. R.877-

79. The rape was alleged to have occurred in a stairwell where Cummings and B.S. had gone to

talk.

On February 26, 1998, a Wyoming County Grand Jury returned a one-count indictment

charging Cummings with first degree rape (New York Penal Law ("P.L.") § 130.35(1)). Prior to

the case going to trial, B.S., who had retained an attorney, filed suit against the county and the

hospital, alleging that they had failed to protect her from Cummings, whom they knew was a

convicted rapist. Meanwhile, Cummings and his trial counsel pursued plea negotiations with the

Wyoming County district attorney's office and had reached an agreement wherein Cummings

would plea to a misdemeanor sexual offense, and receive a one-year sentence of time served.

According to Cummings, after his family refused to pay the $300,000 demanded by B.S. to settle

the civil case, B.S.'s civil attorney was permitted to intervene in the plea negotiations and veto

the plea agreement. However, it appears that the district attorney did not want to try Cummings

on the first degree rape charge, so B.S.'s civil attorney lobbied for the appointment of a special

prosecutor to present the case to a second grand jury.

On April 15, 1999, Cummings moved for dismissal of the indictment in the interest of

justice pursuant to C.P.L. § 210.40. R.91-137. In their opposing papers, the People argued that

fairness required the opportunity to present the case to another grand jury and that, to be fair, the

---

[1]     Citations to "R.__" refer to the record on appeal in state court, submitted by respondent as part of
the state court records in connection with his answer to the petition.

jury must be allowed to choose between first degree rape and sexual misconduct, and be advised that one is a felony and one is a misdemeanor, and be informed of the differing lengths of sentences applicable to the two crimes. *See* R.139. The defense did not contest the application.

The County Court (Dadd, J.) dismissed the indictment and granted leave to re-present the case to another grand jury within 30 days. R.146. A special prosecutor was appointed and four charges were read to the grand jury–first degree rape (a class B felony), sexual misconduct (a class A misdemeanor), first degree sexual abuse (a class D felony), and unlawful imprisonment (a class A misdemeanor). *See* R.152-206; *see also* Respondent's Supplemental Memorandum of Law ("Resp't Supp. Mem.") at 3-6 (Docket No. 20). The jury returned an indictment approving all four counts.

Cummings was arraigned on May 28, 1999, on a three-count indictment charging him with first degree sexual abuse (P.L. § 130.651(1)); first degree rape (P.L. § 130.35(1)); and sexual misconduct (P.L. § 130.20(1)).

On September 27, 1999, the County Court required the People to elect between first degree rape and sexual misconduct. R.333-38. Noting that the crimes had identical elements but differing punishments, the special prosecutor asserted that it would be "an injustice both to the People and the [petitioner]" to have to do so, and stated that he believed "the jury ought to be told the difference" and "given the opportunity to make that choice." R.335. The trial judge disagreed and declined his request. The third count, charging sexual misconduct, accordingly was dismissed. R.338. Thus, the case proceeded to trial on two charges–first degree rape, and first degree sexual abuse.

**B.     The Trial**

Cummings was someone with whom B.S. had recently struck up a casual acquaintance. B.S. testified that they had talked on several occasions, and he had asked her out on dates; B.S. had turned him down, however, as she had a serious boyfriend at the time. R.881-84. B.S. said that she still enjoyed talking with Cummings and saw no harm in pursuing a platonic friendship with him.

On November 29th, at Cummings' suggestion that they meet later in the day to talk, she agreed to meet him near the emergency waiting room at around noon. R.882. Cummings suggested that B.S. accompany him into a stairwell that led to the roof of the hospital. R.886. They proceeded up about four flights to a landing where they sat and talked for a while. R.891, 893. Cummings then asked B.S. what she would do if he were to kiss her and she replied, "I don't know, I would not want to." R.894, 1007. Moments later, B.S. recalled, Cummings suddenly grabbed her in a "bear hug" and began "forcefully" kissing her against her will. R.895.

According to B.S., Cummings forced B.S. to open her mouth by pressing his tongue to her lips, and he pushed her head against the wall. R.896-99. With his arms tightly around her, Cummings twisted his body, pulling her down with him to the floor. R.899. B.S. said she tied to push him off but was unsuccessful as he was putting all of his weight on top of her. R.877, 900, 1031. B.S. twice told Cummings to stop what he was doing, but to no avail. R.901. Cummingss removed the straps of her overalls, reached down into her pants, pushed her underwear aside, and began manipulating and probing her vagina with his fingers. R.901-04. B.S. told Cummings that she "didn't want to do this" and tried to escape his grasp. R.904.

At one point, B.S. was able to maneuver her way out of Cummings' arms and stand up

4

but Cummings grabbed her and pulled her back down to the floor. R.905. Cummings shoved her overalls down to her ankles and removed his pants. R.906. He got on top of her, pushed her underwear to one side, and penetrated her vagina with his penis. R.907. B.S. stated that she repeatedly told him to stop, and tried to get away from him, but Cummings continued to have intercourse with her. R.907. When he finished, Cummings got up, put his pants back on, and commented, "[That] wasn't a good way to start a relationship." R.909. B.S. agreed with him.

After B.S. got dressed, she walked with Cummings down the stairs and went to the cafeteria. R.910. At Cummings' request, they exchanged telephone numbers. R.909-11. Cummings walked B.S. to her car, and she drove away. R.911. B.S. had no explanation for why she permitted Cummings to walk with her after what had occurred in the stairwell, stating that she did not know. R.911. B.S. stated that she was dazed and "pretty confused" as she drove home. R.911. B.S. stated that she was unsure what had just happened to her and felt "[l]ike the world [had] flipped over on [her]." R.912.

B.S. stated that she became angry and frustrated over the next two days, and eventually confided in her boyfriend what had happened. R.912. On December 2, 1997, three days after the incident, B.S. reported the details of the rape to the Village of Warsaw Police Department. R.833, 841. The following day, at the request of the police, B.S. placed a telephone call to Cummings' home. R.833-34, 916. By means of a special recording device, the police were able to record the conversation between B.S. and Cummings. Cummings admitted that B.S. had told him to stop, and that he had ignored her. R.296-305. He agreed with her that he had forced her into having sex. R.296, 1048. B.S. asked him, "I just want an answer why you, why, why you didn't stop?" R.299. Cummings replied,

5

> I don't know really. I, I, I don't really know how I could have other than, I mean I could say it [was] pretty much just my hormones, it's just a guy wants to get off, you know what I mean, but I can't totally blame it on that. I don't know what to say to ya [sic], you know?

R.299. After making these statements, Cummings apparently became alarmed–he threatened to kill himself if B.S. went to the police. R.307. B.S. pleaded with him not to follow through on those threats. Eventually, she was able to get off the phone with him. R.307-08. The audiotape of the entire conversation was secured by the police as evidence, and portions of the tape were played for the jury. They were also provided with a written transcript of the tape-recording. R.839, 916.

Cummings testified in his own behalf at trial. He did not deny that he and B.S. had sexual intercourse in the stairwell, but he claimed it had been consensual. According to Cummings, it was B.S. who wanted to find someplace quiet to talk on November 29th. R.594. Cummings suggested the stairwell, and B.S. agreed. R.596. Cummings stated they sat on the fourth floor landing and talked for a while. R.598-603. At one point, Cummings leaned over and kissed her, and she opened her mouth to him and returned the kiss. R.603. After they kissed for a while, Cummings began fondling her breasts, to which she never objected. R.605. Cummings said that he unbuckled her overalls and began touching her vagina; she responded by stroking his penis until he became erect. R.608. Cummings stated that they then began to have sex, but B.S. eventually stopped, announcing, "[T]his ain't [sic] right." R.609-10. Cummings agreed with her, and they stopped. Cummings walked her to her car, and they exchanged phone numbers. R.610.

Cummings admitted on cross-examination that the recording of the phone conversation was accurate, but he claimed that he "was saying all of that stuff just to agree with her" and that everything he said on the phone had "zero truth" to it. R.1046, 1052. Cummings asserted that the

6

only reason he had agreed with her statement that he had forced her into sex was "just to get her off the phone." R.1048.[2]

The jury returned a verdict convicting Cummings of first degree rape. He was sentenced as a second felony offender to a determinate sentence of 10½ years.

### B.        Post-Conviction Proceedings in State Court and the Instant Habeas Petition

The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the conviction. *People v. Cummings*, 289 A.D.2d 992, 735 N.Y.S.2d 314 (App. Div. 4th Dept. 2001). The New York Court of Appeals denied leave to appeal. *People v. Cummings*, 97 N.Y.2d 752, 767 N.Y.S.2d 402 (N.Y. 2002).

Cummings also filed several applications for collateral relief in state court. His *coram nobis* petition was denied by the Fourth Department on September 18, 2003; leave to appeal subsequently was denied.

Cummings filed his original federal habeas petition *pro se* on or about December 10, 2003, alleging that (1) the prosecutor impaired the integrity of the grand jury by not adequately explaining the difference between first degree rape and sexual misconduct; (2) petitioner's rights under C.P.L. § 30.30 had been violated; (3) petitioner's Sixth Amendment right to confrontation was violated when the trial court prohibited him from cross-examining the victim about two previous incidents in which she had been the victim of sexual abuse, and about what medications she was taking; (4) the verdict was against the weight of the evidence; and (5) petitioner's sentence was harsh and excessive. Respondent answered the petition on April 7, 2004.

---

[2]        The prosecutor argued, and the jury apparently agreed, that a review of the transcript of the phone conversation reveals that it was the victim, not Cummings, who was trying to end the conversation. R.306-07, 1049.

Cummings retained counsel and, on July 26, 2004, moved to vacate the judgment in Wyoming County Court. The trial judge, in an order dated November 3, 2004, denied the motion to vacate, ruling that the claims presented could have been raised on direct appeal but unjustifiably were not, and/or the claims had been rendered moot by the petit jury's guilty verdict. Leave to appeal to the Appellate Division was denied.

Cummings sought and received permission from this Court to file an amended petition, which he did on January 20, 2005. The amended petition raised the following claims: (1) petitioner's right to due process in the grand jury was violated by the special prosecutor's explaination of the difference between first degree rape and sexual misconduct; (2) the prosecutor permitted the victim's attorney to take over the pre-trial plea negotiations; (3) the trial judge and the prosecutor had a conflict of interest because they were employed by Wyoming County, and the victim had filed a civil suit against the hospital, a county-run entity, and the county; (4) trial counsel and appellate counsel were ineffective because trial counsel failed to cross-examine the victim regarding her motivation for bringing the civil suit; and (5) petitioner's sentence was vindictive. The amended petition is deemed to incorporate all of the claims raised in the original petition.

Respondent answered the amended petition, asserting the defenses of failure to exhaust and procedural default with regard to a number of Cummings' claims. Respondent also argued that several of Cummings' claims were not cognizable on habeas review and that all of the claims were without merit. *See, generally*, Resp't Supp. Mem. (Docket No. 20).

Cummings returned to Wyoming County Court where filed another C.P.L § 440.10 motion. This was denied. Cummings then sought leave to file a second amended petition, which

application respondent opposed. This Court denied Cummings' request to file a second amended

petition in a Decision and Order entered July 28, 2008. The claims before the Court for

consideration accordingly are only those set forth in the original petition and the amended

petition.

For the reasons that follow, I recommend that the original petition (Docket No. 1) and

first amended petition (Docket No. 12) be dismissed.

## III.   DISCUSSION

> **A.   Original Ground I: "Prosecutorial Misconduct before the Grand Jury**
> **compromised the integrity of that body and deprived petitioner of his right**
> **to Due Process of Law as well as a Fair Trial and Equal Protection."**
> **Amended Ground I: "DUE PROCESS VIOLATIONS IN GRAND JURY"**

As his first ground for habeas relief, Cummings contends that the special prosecutor

committed misconduct during the grand jury proceeding and violated his right to due process.

Specifically, Cummings contends that it was "extremely prejudicial" for the special prosecutor to

inform the grand jury of the difference between the length of imprisonment possible with regard

to convictions for forcible sexual misconduct and first degree rape.[3] Cummings now asserts that,

absent such comments by the special prosecutor, the indictment might not have been issued.

This claim, which alleges defects in the grand jury proceedings, is not cognizable in a

federal habeas proceeding. *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir.1989) (citing *United States v.*

---

[3]       Cummings cites the prosecutor's statement that, "The elements [of sexual misconduct and first degree rape] appear to be the same, do they not? Yes. What's the difference? The difference is this. Rape in the 1st degree is a B violent felony, at the time of the occurrence alleged here with a minimum sentence of three to six years upon conviction. The maximum sentence is twelve and a half to twenty-five years. Sexual misconduct is a[ ] [class] A misdemeanor. The minimum sentence is almost nothing, adjournment in contemplation of dismissal, conditional discharge, a fine, probationary sentence, up to the maximum of one year in the Wyoming County jail plus a fine." Petitioner's Memorandum in Support of Amended Petition ("Pet'r Amend. Mem.") at 3 (quoting Grand Jury Minutes at pp. 5,6) (Docket No. 12).

*Mechanik*, 475 U.S. 66, 89 (1986)). The Supreme Court held in *Mechanik* that an error in a federal grand jury proceeding is essentially nullified by a subsequent guilty verdict rendered by a petit jury. The "petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." *Mechanik*, 475 U.S. at 89. Relying upon *Mechanik*'s reasoning, the Second Circuit concluded in *Lopez* that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in a federal court." *Lopez*, 865 F.2d at 32 (interpreting *Mechanik*, 475 U.S. at 89).   This claim accordingly should be dismissed as not cognizable on federal habeas review.

**B.     Amended Ground One: "DUE PROCESS VIOLATIONS IN GRAND JURY"**

Cummings asserts that "[w]hile appeal counsel explored the issue of the propriety of the Prosecutor mentioning 'punishment' differences, as between the crimes of rape, and sexual misconduct, there was no mention . . . of an extremely prejudicial remark in the Grand Jury that the punishment for sexual misconduct was 'almost nothing' . . . ." Amend. Pet. at 3 (Docket No. 12). The allegations in support of the Amended Ground One, like those in support of the Original Ground One, relate soley to alleged deficiencies in the grand jury proceeding. As such, they fail to set forth a cognizable federal issue amenable to habeas review under the authority of *Lopez v. Reilly*, as discussed more fully, *supra*, at Part III.A. Accordingly, I recommend that Amended

10

Ground One be dismissed as not cognizable on federal habeas review.

> **C.** **Original Ground Two: "Petitioner's right to a Speedy Prosecution and Due Process of Law were violated by an unreasonable delay caused by Prosecutorial Subterfuge and confusion[.]"**

Respondent asserts that this claim is not cognizable on federal habeas review because it does not present a question of federal constitutional law. Respondent notes that on direct appeal, appellate counsel only argued that "appellant's statutory right to a speedy trial was violated." (Brief for Appellant, page 31), and, further, the habeas corpus petition merely raises New York State issues and does not raise any federal authority to support the conclusion that due process was violated. Cummings concedes that the claim in state court was couched in terms of a violation of C.P.L. § 30.30.[4]

A federal court may grant habeas relief only on the ground that a petitioner's conviction is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). The Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) and citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)).  The Supreme Court "reemphasize[d]" in *McGuire* "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution,

---

[4]     C.P.L. §30.30, although often referred to as New York's "speedy trial statute" actually deals with the prosecution's obligation to announce their trial readiness in a timely fashion. N.Y. CRIM. PROC. LAW § 30.30. Pursuant to the New York State law standard under C.P.L. §30.30, a trial court could find a violation of a defendant's so-called right to a speedy trial to have occurred if the prosecution was not ready for trial within six months of the filing of an accusatory instrument against him. *See* N.Y. CRIM. PROC. LAW § 30.30(1). In contrast, in assessing a violation of a defendant's right to a speedy trial under the Sixth and Fourteenth Amendments to the Constitution, a court would have to apply the four-factor balancing test adopted by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

laws, or treaties of the United States." *Id.* (citations omitted). To the extent that Cummings alleges a denial of his statutory rights under C.P.L. § 30.30, that claim is not cognizable on habeas review.

Furthermore, any "speedy trial" claim that Cummings now seeks to advance was not fairly presented to the state courts on direct appeal and therefore remains unexhausted. *See, e.g.*, *Gibriano v. Attorney General of the State of New York*, 965 F. Supp. 489, 492 (S.D.N.Y. 1996) (citing *Woodard v. Berry*, No. CV-90-1053, 1992 WL 106508, at *2 (E.D.N.Y. April 24, 1992)). District courts in this Circuit have held that a claim premised on C.P.L. §30.30 claim is not tantamount to raising a claim that a petitioner's Sixth Amendment right to a "speedy trial" has been violated. *E.g.*, *Gibriano v. Attorney General of the State of New York*, 965 F. Supp. at 492, *Woodard v. Berry*,1992 1992 WL 106508, at *2. As one district court in this Circuit has explained, "Merely raising a state [C.P.L.] §30.30 claim does not present a constitutional speedy trial claim for federal habeas purposes because it involves legal and factual analyses that are different from those entailed in examining a Sixth Amendment claim." *Pjetrovic v. Bennett*, No. 00Civ.0398(VMRLE), 2002 WL 32780, at *4 (S.D.N.Y. Jan. 3, 2002) (report and recommendation).

> Section 30.30 [of New York's Criminal Procedure Law] is a statutory time frame in which the People of the State of New York must be ready for trial; Section 30.30 is not, as such, a statutory embodiment of the constitutional guarantee to a speedy trial . . . By contrast, Criminal Procedure Law Section 30.20 does embody the federal constitutional right to a speedy trial. For this reason, when the petitioner twice raised his statutory "speedy trial" claim in the state court under Section 30.30, he did not effectively present to those courts the federal constitutional speedy trial claim that he raises now in this court. . . .

*Woodard v. Berry*, 1992 WL 106508, *2 (citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*) (habeas corpus petitioner does not exhaust state remedies for federal claim through

12

"somewhat similar state-law claim")).  Respondent argues that since petitioner has already had

the one direct appeal to which he is entitled, he therefore no longer has a state court forum in

which to raise this on-the-record claim. Therefore, respondent argues, this claim should be

deemed exhausted but found to be procedurally barred from review. Respondent's Memorandum

of Law ("Resp't Mem.") at 3-4 (Docket No. 7) (citing *Grey v. Hoke*, 933 F2d 117, 120-21 (2d

Cir. 1991); *Spence v. Superintendent*, 219 F.3d & 162, 170 (2d Cir. 2000) ("Because [petitioner]

failed to raise his claim in the ordinary appellate process and can now no longer do so, it is

procedurally defaulted.")). I agree with respondent that claim is procedurally barred, and may

only be reviewed if petitioner establishes cause for the default and resulting prejudice, or that a

fundamental miscarriage of justice will result from non-review of the claim. *Aparicio v. Artuz*,

269 F.2d 78, 90 (2d Cir. 2001).

Cummings has not attempted to demonstrate cause or prejudice. Nor has he come

forward with new evidence tending to show that he is "factually innocent" so as to qualify for

the "fundamental miscarriage of justice" exception. The procedural default remains unexcused,

and I therefore recommend dismissal of Ground II on this basis.

> **D.     Original Ground III: Petitioner's Right to Confrontation was Violated when Trial Court Limited the Scope of Cross-Examination of the Complainant Rendering the Verdict against the Weight of Credible Evidence – Denying Petitioner's Right Under the Due Process Clause of the Constitution**

Cummings alleges that he was denied his federal constitutional right under the Sixth

Amendment to confront his accuser Specifically, petitioner claims the trial court erred when he

was denied the opportunity to question the complainant about her prior accusations of sexual

abuse and what medications she was taking. He also appears to argue that his due process right

to present evidence in his defense was compromised. Finally, Cummings argues that this

limitation placed upon his cross-examination of the complainant resulted in the jury returning a

verdict that was against the weight of the credible evidence.

At trial, Cummings's defense counsel raised the issue of cross-examination of the

complainant about her prior sexual abuse accusations. R.317-333. Defense counsel argued to the

trial court,

> And, again, it has nothing to do with her sexual partners or sexual habits; it deals
> with two situations where she said she was a victim; therefore, I think falls within
> the gray area of [C.P.L. §] 60.42 and it comes down to relevancy versus prejudice.
> My position, Your Honor, is that her state of mind and her impressions and her
> perceptions of the events which occurred on November 29th are relevant and
> probative with respect to, at least, her interpretation of forcible compulsion or
> consent or other motivation she might have with respect to the manner in which
> she reported the incident some three or four days later.

R.318-19. The trial court was informed that the prior complaints found in the mental health

records related to an incident when the complainant was six or seven years-old and one  when

she was fifteen years-old. R.320. The trial judge ruled as follows:

> I will deny the application of the defendant to cross-examine the complainant
> based upon the psychiatric records which were disclosed. I do not do this on the
> grounds of privilege. I do it on the statutory restrictions of the Criminal
> Procedure Law, as well as the grounds of relevancy. In the Court's opinion, first
> the incidents concerned are remote in time. Any attempt to tie them to the
> present case is, at best, speculative and I think would be misleading to the trier
> of fact, and the Court in its discretion will not allow that cross-examination
> which the defense has applied for.

R.333.

I shall examine Cummings' evidentiary contentions in turn, beginning with the alleged

limitation on his questioning of the victim regarding her having been a victim of previous sexual

abuse.

### 1.      Restriction on Cross-Examination Regarding Victim's Previous Complaints of Sexual Assault

On direct appeal, appellate counsel raised the issue of trial counsel's inability to cross-examine the complainant about her previous claims of sexual assault. *See* Petitioner's Appellate Brief, Point VII at p. 53 (quoted in Resp't Supp. Mem. at 14) (Docket No. 7). Cummings' appellate counsel argued in the brief that the intended area of questioning did not fall within the "proscription of the rape shield statute," *id.* at 51, and was related to "complainant's state of mind at the time of the charged events. . . ," *id.* at 52). Cummings argued that the "court abused its discretion" in denying the requested cross-examination, *id.* at 52, and moreover "denied appellant his rights to present a defense of his choosing, to confront witnesses against him, and to due process as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution. . . ." *Id.* at 53. The Appellate Division did not specifically address this issue, but presumably included it in its dismissal of petitioner's "remaining contentions" as "lacking in merit".   *People v. Bennett*, 289 A.D.2d at 994. Because this general statement constitutes an adjudication of the merits of petitioner's constitution al claim, *see*, *e.g.*, *Holland v. Donnelly*, 324 F.3d 99 (2d Cir. 2002), the differential AEDPA Standard of review applies. Respondent argues that the Appellate Division's rejection of this claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law.

The Confrontation Clause of the Sixth Amendment does not require that there actually be effective confrontation of a witness; rather, the Constitution is satisfied if a defendant has been permitted the *opportunity* for effective confrontation of a witness. *E.g.*, *Delaware v. Van Arsdall*, 475 U.S. 673 (1986). Further, the Sixth Amendment right to confront and cross-examine witnesses is not absolute, and it "may, in appropriate cases, bow to accommodate other

15

legitimate interests in the criminal trial process." *Rock v. Arkansas*, 483 U.S. 44, 55 (1987)

(quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)). The Supreme Court has

recognized that while the right to present a defense is "one of the 'minimum essentials of a fair

trial,'" *Rosario v. Kuhlmann*, 839 F.2d 918, 924 (2d Cir. 1988) (quoting *Chambers v.*

*Mississippi*, 410 U.S. 284, 294 (1965)), it is not unlimited.

Thus, the right to present a defense does not allow a criminal defendant to circumvent the

rules of evidence. Instead, a trial court may place restrictions on a defendant's presentation of

evidence without offending the constitution, so long as those restrictions serve "legitimate

interests in the criminal trial process . . . and are not 'arbitrary or disproportionate' to the

purposes they are designed to serve." *United States v. Almonte*, 956 F.2d 27, 30 (2d Cir. 1992)

(quoting *Rock v. Arkansas*, 483 U.S. at 55). Moreover, every limitation on a petitioner's right to

cross-examine a witness does not present a federal constitutional violation. *E.g.*, *Henry v.*

*Speckard*, 22 F.3d 1209, 1219 (2d Cir.), *cert. denied*, 513 U.S. 1029 (1994); *Harper v. Kelly*, 916

F.2d 54, 57 (2d Cir. 1990) ("All erroneous rulings that improperly restrict cross-examination

under state or federal rules of evidence do not necessarily implicate the Confrontation Clause.

Rather, the Constitution only guarantees an *opportunity* for effective cross-examination, not

cross-examination that is effective, in whatever way, and to whatever extent, the defense might

wish."), *cert. denied*, 499 U.S. 943 (1991) (quotations omitted, emphasis in original). And, even

if a habeas corpus petitioner establishes error in the preclusion of evidence, the court is limited in

habeas corpus review only to considering whether the challenged ruling involved error of

constitutional magnitude. *Rosario v. Kuhlmann*.

Turning first to the issue of whether the evidence was properly admissible under C.P.L. §

16

60.42, New York's Rape Shield Statute, that section provides as follows:

> Evidence of a victim's sexual conduct shall not be admissible in a prosecution for an offense or an attempt to commit an offense defined in article one hundred thirty of the penal law unless such evidence:
>
> 1. proves or tends to prove specific instances of the victim's prior sexual conduct with the accused; or
>
> 2. proves or tends to prove that the victim has been convicted of an offense under section 230.00 of the penal law [i.e., offenses relating to prostitution] within three years prior to the sex offense which is the subject of the prosecution; or
>
> 3. rebuts evidence introduced by the people of the victim's failure to engage in sexual intercourse, oral sexual conduct, anal sexual conduct or sexual contact during a given period of time; or
>
> 4. rebuts evidence introduced by the people which proves or tends to prove that the accused is the cause of pregnancy or disease of the victim, or the source of semen found in the victim; or
>
> 5. is determined by the court after an offer of proof by the accused outside the hearing of the jury, or such hearing as the court may require, and a statement by the court of its findings of fact essential to its determination, to be relevant and admissible in the interests of justice.

Cummings did not seek introduction of the evidence based on subsections one through four; rather, he argued that it was "relevant and admissible in the interests of justice," N.Y. CRIM. PROC. LAW § 60.42(5).

As an initial matter, I note that federal courts in this Circuit have held that rape shield statutes represent an appropriate limit on the Sixth Amendment's right of an accused to "confront his accusers" through the opportunity for effective cross-examination. *E.g.*, *Carroll v. Hoke*, 695 F. Supp. 1435, 1439 (E.D.N.Y. 1988) (exclusion of testimony pursuant to Rape Shield Law did not violate defendant's constitutional right of confrontation where ample evidence impeaching victim's testimony was elicited and additional evidence was not really relevant to alibi defense-as opposed, perhaps, to consent defense), *aff'd*, 880 F.2d 1318 (2d Cir. 1989)). I note that under Federal Rule of Evidence, Rule 412, evidence of the victim's sexual conduct is

significantly proscribed where the defendant is accused of a sexual offense.

However, it appears that the trial court erred, to the extent that its ruling appears to have been based on finding that the Rape Shield Law prohibited introduction of the evidence. *See*, *e.g.*, *People v. Byrd*, 309 A.D.2d 593, 765 N.Y.S.2d 354 (App. Div. 4ᵗʰ Dept. 2003) ("Contrary to the trial court's determination, evidence of a victim's prior complaints of sexual assaults is not barred by the Rape Shield Law, which limits the admissibility of certain evidence of a victim's prior sexual conduct[.]") (citing N.Y. CRIM. PROC. LAW § 60.42; *People v. Mandel*, 48 N.Y.2d 952, 425 N.Y.S.2d 63 (N.Y. 1979), *cert. denied*, 446 U.S. 949 (1980)). Although "New York state decisions have held that prior alleged rape complaints by the victim do not come within the proscriptive scope of New York's rape shield statute, . . . a trial court still may exercise its discretion as to whether to disallow such evidence where there is insufficient basis to believe the prior claim was false. *Grant v. Demskie*, 75 F. Supp.2d 201, 221 (S.D.N.Y. 1999) (collecting cases).  The New York Court of Appeals has indicated, however, that a pattern of complaints could cast doubt on a particular allegation and therefore require the trial court to allow sufficient cross-examination on the matter. *See People v. Mandel*, 48 N.Y.2d at 953 (approving the preclusion of cross examination where "[t]here was no sufficient proof offered that the complaints were indeed false and no showing was made that the particulars of the complaints, the circumstances or manner of the alleged assaults or the currency of the complaints were such as to suggest a pattern casting substantial doubt on the validity of the charges made by the victim in this instance or were such as otherwise to indicate a significant probative relation to such charges").

"A habeas court is not an appeals court to review state trial court errors unless they are of

constitutional dimension." *Grant v. Demskie*, 75 F. Supp.2d at 221. Thus, it not the province of

this Court, sitting in habeas review, to determine whether, "in exercising discretion, it would

have allowed this evidence if it were the trial judge, nor whether the trial judge abused his

discretion as a matter of state law in excluding this evidence." *Id.* Rather, "[t]he only question is

whether the trial court's exclusion ruling was 'arbitrary or disproportionate to the purposes' to be

served by rape shield policies, so as to constitute constitutional error." *Id.* (quoting *Agard v.

Portuondo*, 117 F.3d 696, 702 (2d Cir.1997), *cert. denied*, 526 U.S. 1016 (1999)).

Here, Cummings argued to the trial judge that the complainant's prior claims of sexual

abuse were relevant to show the complainant's "state of mind" at the time of the incident

between her and petitioner in the stairwell. The trial judge ruled that the proposed line of

questioning was an attempt to delve into incidents that were remote, and would be speculative

and misleading. Furthermore, the trial court disagreed with defense counsel that the incidents

were  relevant. It bears noting that Cummings did *not* argue that the previous accusations made

by the complainant were false. Thus, the trial court's exercise of discretion was not contrary to

New York state law. *Accord Grant*, 75 F. Supp.2d at 221 (citing, *inter alia*, *People v. Gozdalski*,

239 A.D.2d 896, 896, 659 N.Y.S.2d 677, 678 (App. Div. 4th Dept.) ("The court properly

exercised its discretion in restricting cross-examination of the victim concerning a prior rape

complaint. Defendant failed to establish a basis for the allegation that the prior complaint was

false."), *appeal denied*, 90 N.Y.2d 858, 661 N.Y.S.2d 185 (N.Y. 1997); *People v. Duggan*, 229

A.D.2d 688, 689, 645 N.Y.S.2d 158, 159 (App. Div. 3d Dept.) (court did not abuse its discretion

in prohibiting cross-examination of rape victim about alleged prior false accusation of rape

where defendant's only offer of proof was an unsworn statement based on inadmissible hearsay,

and the "rape allegations . . . were never made to the police or reduced to formal charges"),
*appeal denied*, 88 N.Y.2d 984, 649 N.Y.S.2d 390 (N.Y. 1996)).[5] New York's appellate courts
routinely uphold rulings by trial courts in which they exercise their discretion to exclude
evidence of a victim's prior accusations of sexual assault, where there has been a failure by the
defendant to introduce proof establishing the falsity of the prior incidents. Thus, Cummings has
not demonstrated an error of New York state evidentiary law, much less an error of federal
constitutional magnitude. Accordingly, I recommend that this claim be dismissed.

### 2.   Limitation of Cross-examination Regarding the Complainant's Medications

Cummings also sought to cross-examine complainant about the her medication (Ritalin
and Paxil) she was taking at the time of the incident. According to Cummings, the questioning
was not to show the complainant's mental condition, but rather to explore her ability to reliably
recall events. *See* Petitioner's Appellate Brief at 51 (citing R.971, 975-76) (quoted in Resp't
Mem.) (Docket No. 7). Defense counsel acknowledged that he did not have an expert to discuss
the effects of the medication and therefore would have to rely on the complainant's answers on

---

[5]         *See also People v. Benn*, 213 A.D.2d at 489, 623 N.Y.S.2d at 635 ("Although prior alleged sexual
assault complaints do not fall within the proscriptive scope of CPL § 60.42, it is not an improvident exercise of
discretion for a trial court to restrict cross-examination on that topic, especially where, as here, the defendant
provided no basis for his allegation that the prior complaints were false."); *People v. Passenger*, 175 A.D.2d at 946,
572 N.Y.S.2d at 974 (prior sexual abuse charges by child held inadmissible because "[w]hile proof that the child
made prior false complaints might cast substantial doubt on the validity of the charges in this case . . ., other than
defense counsel's suggestion that the child had a proclivity to make sexual charges, there was no proof that these
earlier complaints were false or suggested a pattern of deceit. . . . [A] trial court may exercise its discretion to restrict
cross-examination on this issue where there is no basis for believing that the prior unrelated claims were false. . . .
Here, the sexual abuse accusations . . ., which predated the events giving rise to defendant's indictment, were never
reduced to formal complaints. . . . Accordingly, exclusion was proper."); *People v. Hamel*, 174 A.D.2d at 837, 571
N.Y.S.2d at 139 ("Inasmuch as defendant sought to impeach the complainant's credibility ..., without an adequate
factual basis for believing that the prior complaint was false ..., we see no abuse of [trial court's] discretion in
denying defendant's motion to permit cross-examination of the complainant about a prior incident of attempted
rape."); *People v. Lippert*, 138 A.D.2d at 771, 525 N.Y.S.2d at 391 (no abuse of discretion "where, as here, the party
seeking to introduce such [other rape] evidence has no basis for believing that the prior complaints were false").

cross-examination. *See* R.973-75. The trial judge thereupon directed that the complainant be examined outside the presence of the jury. She testified that the Ritalin helped her to concentrate and that the Paxil aided her in understanding. *See* R.975. Based on these answers, petitioner would not have been able to generate on cross-examination any evidence that the medication impaired the complainant's perceptive abilities. Therefore there was no prejudice. As the cross-examination would not have yielded evidence to fulfill defense counsel's stated purpose in questioning the complainant, I cannot find that there was an error. Accordingly, I recommend that the original Ground III be dismissed.

### 3. Effect of the Allegedly Erroneous Limitation on Cross-examination on the Jury's Verdict

As a sub-part of his claim that the trial court improperly restricted his cross-examination of the victim, in violation of his Sixth Amendment rights, Cummings contends that this error resulted in a guilty verdict that was against the weight of the credible evidence. The Appellate Division rejected this claim on direct appeal, holding that based on its review of the record, it was unable to conclude that the jury failed to give the evidence the weight it should be accorded. *People v. Cummings*, 298 A.D.2d at 993 (citing *People v. Bleakley*, 69 N.Y.2d 490, 495 (N.Y. 1987).

Respondent argues that the Court should reject Cummings' attempt to transform his weight of the evidence claim into an issue of federal constitutional magnitude. Respondent correctly notes that a "weight of the evidence" claim derives from New York Criminal Procedure Law ("C.P.L.") § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. CRIM. PROC. LAW § 470.15(5). An

argument that a verdict is against the weight of the evidence is a pure state law claim grounded in the criminal procedure statute, whereas a claim that the verdict is legally insufficient is based on federal due process principles. *People v. Bleakley*, 69 N.Y.2d at 495; *see also Jackson v. Virginia*, 443 U.S. 307, 318-19, (1979).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. at 68; *see also* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"). Since a "weight of the evidence claim" is purely a matter of state law, it is not cognizable on habeas review. *Accord*, *e.g.*, *Ex parte Craig*, 282 F. 138, 148 (2d Cir. 1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence . . ."), *aff'd*, 263 U.S. 255  (1923); *Garrett v. Perlman*, 438 F. Supp.2d 467, 470 (S.D.N.Y. 2006) (dismissing claim that conviction was against the weight of the evidence; such a claim is not a basis for habeas relief but presents only an error of state law, for which habeas review is not available); *Douglas v. Portuondo*, 232 F. Supp.2d 106, 116 (S.D.N.Y. 2002) (same). Accordingly, I recommend dismissing the "weight of the evidence" claim raised in Cummings' original Ground III because  a habeas petitioner's disagreement with the jury about the weight of the evidence does not raise a federal claim cognizable on habeas review. *Accord*, *e.g.*, *Garrett*, 438 F. Supp.2d at 470; *Douglas*, 232 F. Supp.2d at 116.

### E.      Amended Ground III: Ineffectiveness of Trial Counsel Based on Ineffective Cross-Examination

Cummings argues that his trial counsel was ineffective in

failing to cross-examine the complainant on the money motive and expectancy of

monetary damages in her pending civil litigation (against both defendant and the County of Wyoming), for her criminal complaint against defendant (when the record was clear at that point that complainant and her counsel would agree to withdraw the criminal complaint if defendant's family paid her $300,000, the civil suit settlement demand); specifically, that trial counsel did not even make an offer of proof at trial to preserve the issue for Appellate review.

Amend. Pet. at 4 (Docket No. 12). I agree with respondent that the claim lacks merit and does not warrant habeas relief, and I recommend dismissing it on that basis.

Decisions about "whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature" and generally will not support an ineffective assistance claim. *Dunham v. Travis*, 313 F.3d 724 (2d Cir. 2002) (decision not to use victim's prior statements to impeach her was strategic one) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987)); *see also United States v. Luciano*, 158 F.3d 655 (2d Cir. 1998); *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992) (no ineffective assistance despite defendant's claim that lawyer had failed to thoroughly impeach prosecution witnesses, because decisions as to nature and extent of cross-examination are strategic).

I find unpersuasive Cummings' assertion that trial counsel lacked a reasonable strategic basis for declining to cross-examine B.S. about the civil lawsuit she had filed and her motivations for pressing her criminal complaint against petitioner. Cummings argues that trial counsel had no reason not to "pursue the circumstances of the money veto of the negotiated pleas by complainant and her civil attorney – circumstances characterized by the Special Prosecutor – as 'extortion' – in his own cross examination of the complainant[.]" Pet'r Amend Mem. at 11 (Docket No. 12). Respondent counters with the assertion that questioning regarding the civil suit would have highlighted the fact that petitioner had a previous conviction for second-degree rape, and that he was fulfilling his community service for that conviction by working at the hospital,

23

and that the victim believed that the county failed to protect her against petitioner. As for the victim's motivation in pursuing criminal charges against petitioner, that was obvious–she believed he had raped her and felt that he deserved to be prosecuted and punished for it. Questioning the victim about these two issues had a high risk of exposing petitioner to very unfavorable testimony, and could have proved to be very damaging to petitioner's case. Thus, counsel did not make an unreasonable decision in declining to pursue this risky area of questioning, and cannot be found to have been ineffective. *See United States v. Eisen*, 974 F.2d at 265. I therefore recommend dismissing Cummings' claims attacking trial counsel's performance as without merit.

    **F.**    **Original Ground IV: "The Sentence imposed hereon Violated that Eighth Amendment Proscription against Cruel and Unusual Punishment and has an appearance of Vindictiveness to Punish Petitioner for Exercising his Right to Trial"**

    Cummings' claim that the trial court abused its discretion in imposing what he alleges to be a harsh and  excessive sentence does not provide a basis for federal habeas relief. No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law. *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). Petitioner was sentenced for rape in the first degree (P.L. §130.35, a class B violent felony) pursuant to P.L. §70.02(a), as a predicate felon. to a 10½-year determinate sentence. Because this was a violent felony offense, the range of a possible sentence had a minimum of  8 years and a maximum of 25 years. *See* P.L. §70.06(6)(a). The 10½-year sentence, near the bottom of the sentencing range, was clearly within the range of New York State law. Therefore, no constitutional claim is presented. Accordingly, I recommend that Cummings' claim of a harsh and excessive sentence be

dismissed as not cognizable on federal habeas review.

Turning next to petitioner's claim of an Eighth Amendment violation, he contends that his sentence of 10 ½ years for a conviction of forcible rape amounts to "cruel and unusual" punishment.  "The Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." *United States v. Santos*, 64 F.3d 41, 45 (2d Cir.1995) (quoting *Rummel v. Estelle*, 445 U.S. 263, 271 (1980)). *Rummel* has been held to stand for "the proposition that federal courts should be reluctant to review legislatively mandated terms of imprisonment, and that successful challenges to the proportionality of particular sentences should be exceedingly rare." *Id.* at 45 (quoting *Hutto v. Davis*, 454 U.S. 370, 374, 556 (1982) (*per curiam*) (internal quotation marks and citation omitted)). The Supreme Court has stated that "one could argue without fear of contradiction by any decision of [the Supreme Court] that for crimes concededly classified and classifiable as felonies . . . the length of the sentence actually imposed is purely a matter of legislative prerogative." *Rummel v. Estelle*, 445 U.S. at 274; *see also Harmelin v. Michigan*, 501 U.S. 957  (1991) (discussing the limited scope of the proportionality principle under the Eighth Amendment). "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are grossly disproportionate to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring).

Given the Supreme Court precedent on this issue, it would be impossible to conclude that Cummings' 10 ½-year sentence of imprisonment is "grossly disproportionate" for his crime of forcible rape. Accordingly, Cummings' Eighth Amendment claim should be dismissed as without merit.

Finally, to the extent petitioner claims his sentence was vindictive, I likewise recommend rejecting this claim. The issue of a vindictive sentence usually arises in cases where a longer sentence has been imposed after a re-trial. *See Alabama v. Smith*, 490 U.S. 794 (1989). No presumption of vindictiveness arises when the first sentence was based upon a guilty plea, and the second sentence follows a trial. *Id.* Here, petitioner claims that the sentence was vindictive because it was much higher after trial than it was based on the initial offer to plead guilty to a misdemeanor. However, the pre-trial offer of one year of local jail time for the class A misdemeanor of sexual misconduct was not a legal sentence for the crime of conviction, the class B felony of first degree rape. Following the petit jury's verdict finding Cummings guilty beyond a reasonable doubt of first degree rape, the trial court could not have sentenced him to a prison term of one year to be served in local jail.

G. **Original Ground Five: "[T]he Prosecutors permitted the civil attorney for the complainant . . . in tactics literally characterized by the Special Prosecutor as 'extortion', to drive the prosecution forward (in vetoing negotiated plea and dismissal resolution) when both the Wyoming County District Attorney, and the Special Prosecutor agreed that the felony case had insufficient evidence to proceed, and that at the very worst, the matter should be resolved with a misdemeanor plea . . . ."**

Cummings argues that "but for his refusal to accept a $300,000. Settlement demand in the civil suit . . . , there would have been a misdemeanor plea deal which would have ended this prosecution without jail time for [him]." Pet'r Amend. Mem. at 5 (Docket No. 12). He contends that the district attorney and the appointed special prosecutor allowed the complainant's civil attorney to "control and drive the course and direction of the accusatory stage . . ., thus usurping the prerogative of the People in presenting the case, or not presenting it to a duly appointed Grand Jury, and impugning the integrity of the Grand Jury Process, in plain derogation

26

defendant's rights."

Without a doubt, it was unlucky for Cummings that the plea negotiations fell through and he was not able to obtain the benefit of an extraordinarily favorable plea deal. However, once that occurred, Cummings did not have a constitutional right *not* to be re-indicted on criminal charges. Indeed, when Cummings' trial counsel moved to dismiss the indictment, it was on purely equitable grounds, under C.P.L. § 210.40, which grants the trial court the discretion to dismiss an indictment if a court finds that the "ends of justice would be served by the termination of the prosecution," even where there is no basis for such a dismissal as a matter of law. *People v. Clayton*, 41 A.D.2d 204, 206 (App. Div. 2d Dept. 1973) (citations omitted); N.Y. CRIM. PROC. LAW § 210.40. This motion failed and the case was re-presented to a second grand jury, the integrity of which Cummings here again assails. As noted above in this Report and Recommendation, the Second Circuit clearly has held that claims based on alleged defects in the grand jury proceedings are not reviewable in a petition for habeas corpus relief based on a state court conviction. *See Lopez*, 865 F.2d at 32-33 (allegations that the prosecutor presented prejudicial evidence and erred in explaining the law to grand jury do not state a claim cognizable on federal habeas corpus review);  *Mirrer v. Smyley*, 703 F. Supp. at 11-12.

There can be no serious debate that habeas corpus relief is only available to remedy errors of federal constitutional law. Cummings, however, has never actually identified which federal constitutional rights were violated by all of this alleged misconduct on the part of the district attorney and the special prosecutor which, I must emphasize, occurred prior to the presentment of the case to the second grand jury and prior to Cummings' actual trial. As discussed above, conviction by a petit jury "transforms any deficiencies in the grand jury

proceedings into harmless error, because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt." *United States v. Mechanik*, 475 U.S. at 68, 89; *accord*, *e.g.*, *Lopez v. Riley*, 865 F.2d at 33. In sum, I recommend that the "Original Ground Five" be dismissed based on Cummings' failure to state a claim upon which habeas relief can be granted.

> **H.     Amended Ground Five: "[T]here was 'institutional' conflict of interest in this prosecution, where the County of Wyoming was faced with exposure for a civil money judgment in an amount of several hundred thousand dollars, specifically, the brother of the presiding Judge was County Attorney; the trial counsel for defendant was Public Defender employed by the County; and the Prosecutors were County employees."**

Cummings essentially is contending that there was a *per se* conflict of interest occasioned by the fact that the prosecutor, trial judge, and defense counsel were all county employees, and the complainant had filed a civil suit naming the county, along with the hospital and the probation department,  as a defendant.

Respondent argues that this claim is procedurally defaulted and frivolous. Respondent points out that when it was raised in support of petitioner's C.P.L. § 440.10 motion, the trial court rejected it on procedural grounds–namely, that sufficient facts appeared on the record to have permitted Cummings to raise it on direct appeal, but had failed to do so. *See* N.Y. CRIM. PROC. LAW § 440.10(2)(c). As respondent points out, C.P.L. § 440.10(2)(c) has been recognized by the Second Circuit as an independent and adequate state ground. I agree that Cummings has failed to demonstrate cause and prejudice for his procedural default, or that a fundamental miscarriage of justice would occur should this claim not be reviewed on federal habeas. Accordingly, I recommend dismissing it as barred due to his unexcused procedural default.

In the alternative, I recommend dismissing the claim as entirely unsupported factually or

legally. Notably, Cummings' memorandum of law is devoid of any case law supporting this argument, *see* Pet'r Amend. Mem. at 11-12. In this Court's opinion, Cummings cannot produce actual evidence on the record substantiating a conflict of interest and so has attempted to manufacture such a conflict out of surmise and innuendo. For instance, Cummings points to trial counsel's failure to cross-examination the complainant about her civil lawsuit against the county. Is that not, Cummings asks, proof that of a "[p]ervasive [i]nstitutional," *id.* at 11, conflict of interest? The Court rejects the implication of Cummings' rhetorical question. The Court finds it telling that all of his remaining allegations of a conflict of interest pertain to events which occurred *before* Cummings' trial and conviction. Although the circumstances surrounding the initial plea negotiations appear to have been somewhat irregular, that does not necessarily mean that any of Cummings' constitutional rights were violated so as to make this Court question the fundamental fairness of his trial. Federal habeas is plainly not the proper forum in which to raise the vast majority of petitioner's claims, including this one. Most important, the "factual" basis of Cummings' claim of multiple conflicts of interest is nothing more than pure speculation on his part. Accordingly, it should, in the alternative, be dismissed as without merit.

## IV.   CONCLUSION

For the reasons set forth above, the Court recommends that the petition for a writ of habeas corpus filed by Douglas T. Cummings be dismissed. Furthermore, the Court finds that Cummings has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). Therefore, the Court recommends that no Certificate of Appealability issue with respect to any of petitioner's claims.

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated:  August 6, 2008
Rochester, New York.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: Rochester, New York
       August <u>6</u>, 2008.